UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILBERT BRADLEY (#118934)**                         **CIVIL ACTION**

**VERSUS**

                                                                              **23-446-JWD-SDJ**

**CHAD HARDY, ET AL.**

## RULING

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary, filed this proceeding pursuant to 42 U.S.C. § 1983 against Defendants Chad Hardy and Dejarius Dunn, complaining that his constitutional rights have been violated due to the excessive use of force. Plaintiff requests monetary relief. The plaintiff now moves for a default judgment against defendant Hardy. *See* R. Doc. 19.

## PROCEDURAL HISTORY

On June 9, 2023, the plaintiff filed a Complaint (R. Doc. 1) against defendants Dejarius Dunn and Chad Hardy. On August 8, 2023, the Magistrate Judge issued a Report and Recommendation (R. Doc. 4) recommending that the plaintiff's claims be dismissed. The plaintiff filed an Objection (R. Doc. 5) and on August 22, 2023, the Magistrate Judge issued an Amended Report and Recommendation (R. Doc. 6) recommending that the plaintiff be given leave to amend.

On September 5, 2023, the plaintiff filed his Amended Complaint (R. Doc. 7), and the Amended Report and Recommendation was adopted by the District Judge on September 26, 2023. *See* R. Doc. 8. On November 7, 2023, the Magistrate Judge ordered that the United States Marshal serve the defendants wherever found. *See* R. Doc. 10. Summons were issued and on December 22, 2023, both summons were returned unexecuted. *See* R. Docs. 12 and 13.

1

On April 9, 2024, the summons for defendant Dunn was again returned as unexecuted. *See* R. Doc. 15. On the same date, the summons for defendant Hardy was returned as executed and showed that defendant Hardy had been served on March 22, 2024. *See* R. Doc. 16. Despite being personally served, defendant Hardy failed to respond, and the plaintiff filed a Motion for Clerks Entry of Default (R. Doc. 17) on May 21, 2024. On the same date, the Clerk of Court issued an Order (R. Doc. 18) granting the plaintiff's Motion. On May 29, 2024, the plaintiff filed the instant Motion for Default Judgment (R. Doc. 19) as to Chad Hardy.

## LEGAL STANDARD

The United States Court of Appeals for the Fifth Circuit has adopted a three-step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.; New York Life*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, a court must apply a two-step process to determine whether a default judgment should be entered. First, a court must consider whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default have been clearly established, (4) whether the default was caused by excusable neglect or good faith mistake, (5) the harshness of the default judgment, and (6) whether the court would think itself obliged to set aside the default on a motion by the defendant. *Id.*

Second, a court must assess the merits of the plaintiff's claims and determine whether the plaintiff has a claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016).

## DEFAULT JUDGMENT IS APPROPRIATE UNDER THE *LINDSEY* FACTORS

The Court must first decide whether the entry of default judgment is appropriate under the circumstances, by considering the *Lindsey* factors. First, there are no material facts in dispute because Defendant failed to file an answer or motion under Rule 12. Second, there has been substantial prejudice because Defendant's failure to appear in this action leaves Plaintiff with no recourse for his alleged injuries. Third, the grounds for granting a default judgment against Defendant are clearly established, as evidenced by the action's procedural history and the Clerk's entry of default. *See* R. Doc. 18. Fourth, the Court has no basis to find that Defendant's failure to respond was the result of a good faith mistake or excusable neglect because Defendant has failed to respond to Plaintiff or to the Court. Fifth, Defendant's failure to file any responsive pleading or motion mitigates the harshness of a default judgment. Finally, the Court is not aware of any facts that would lead it to set aside the default judgment if challenged by Defendant. The Court therefore finds that the six *Lindsey* factors weigh in favor of default.

## THE SUFFICIENCY OF THE PLEADINGS

Due to his default, Defendant Hardy is deemed to have admitted the allegations set forth in the Complaint. *Busi and Stephenson Ltd.*, 2014 WL 1661213, at *3 (N.D. Tex. Apr. 25, 2014). Nevertheless, the Court must review the pleadings to determine whether the plaintiff has established a viable claim for relief. *Nishimatsu Constr. Co., Ltd. V. Houston Nat. Bank,* 515 F.2d at 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the

3

defendant of his liability and of the plaintiffs right to recover."). The Court must determine whether Plaintiff's pleadings provide a sufficient basis for a default judgment.

## Color of Law

Plaintiff has sued defendant Hardy pursuant to 42 U.S.C. §1983 for the use of excessive force in violation of the Eighth Amendment. As preliminary matter, section 1983 only imposes liability on a person who violates another's constitutional rights under color of law. In his Complaint, as amended, the plaintiff alleges that defendant Hardy was a correctional officer employed by Louisiana State Penitentiary at the time of the complained of event. As such, defendant Hardy was acting under color of law.

## Excessive Force

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding this, the Court

may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

In his Amended Complaint (R. Doc. 7), the plaintiff alleges the following: On December 6, 2022, defendant Hardy responded to a beeper activation on the plaintiff's housing unit where the plaintiff had set a bed sheet on fire in his cell. When defendant Hardy arrived in front of the plaintiff's cell he shouted at the plaintiff, "Bitch you know I hate you and want to kill you and I got something for you." The plaintiff was then handcuffed behind his back and removed from his cell.

After escorting the plaintiff from the tier, defendant Hardy told the plaintiff, " I told you I had something for your black ass." Defendant Hardy then violently attacked the plaintiff by spraying him with a chemical agent. The plaintiff was knocked onto a concrete walk and was yelling due to the burning pain in his eyes and face. While the plaintiff was in agonizing pain, defendant Hardy told the plaintiff, "This is for past grievances against me, dick-sucker" and sprayed the plaintiff a second time with the chemical agent.

Accepting the plaintiff's allegations as true, the plaintiff has stated a viable claim for use of excessive force against defendant Hardy. The plaintiff was restrained, was no longer causing a disturbance, and was not resisting any order when defendant Hardy sprayed the plaintiff with a chemical agent. Defendant Hardy's statements to the plaintiff prior to the administration of the chemical agent indicate that the force was applied maliciously and sadistically for the very purpose

of causing harm rather than in a good faith effort to maintain or restore discipline. As such, the pleadings set forth a viable claim for use of excessive force against defendant Hardy.

## AN APPROPRIATE AMOUNT OF DAMAGES

As to defendant Hardy, the plaintiff requests $300,000 in compensatory damages and $500,000 in punitive damages.

### *Compensatory Damages*

In his original Complaint (R. Doc. 1), the plaintiff alleges that his face and eyes burned for days, that his throat was injured, that he was seen by medical, and was given medication. In his Amended Complaint (R. Doc. 7), the plaintiff alleges that his eyes and face burned when sprayed and that he was in agonizing pain.

In conjunction with his Motion for Default Judgment the plaintiff has filed a Declaration (R. Doc. 20, p. 2) wherein he states that when he was initially sprayed with the chemical agent it caused him to stumble and he was "knock[ed] downward onto a concrete walk…slamming his right knee onto same" injuring his right knee. He further states that he had "a lot of pain in [his] right knee for several days after the… incident." The plaintiff further states that in May of 2024 he began to have pain and swelling in his right knee for which he sought treatment which he relates to the injury sustained on December 6, 2022. However, the medical records submitted by the plaintiff in support of this contention are illegible. (Doc. 20, p. 3-9.)

The record simply does not support a compensatory damage award of 300,000.00. Juries in this circuit have awarded significantly less for more extensive injuries than those shown by the plaintiff herein. A jury in this district recently awarded a plaintiff $10,000.00 in compensatory damages after finding that excessive force was used against the plaintiff who sustained severe injuries. In *Brooks v. Vannoy, et al.,* 19-cv-846 (M.D. La.), due to the use of excessive force, the

plaintiff suffered an injury to his left knee and extensive injuries to his face including fractures to his right zygotic arch, right nasal bone, and right inferior orbital for which surgery was required.

The jury in *Cowart v. Erwin*, 10-cv-1800 (N.D. Tx.) awarded the plaintiff $10,000.00 in compensatory damages for the use of excessive force. Cowart was punched in the face while in a submissive position resulting in a neck sprain, contusions to his face, scalp and neck, and permanent injury to his right hand. The plaintiff experienced pain during the incident which persisted for a period of time thereafter.

In *Ostrander v. Kosteck, et al.*, 13-cv-360 (W.D. Tx.) the jury awarded the plaintiff $5,000.00 in compensatory damages for the use of excessive force and retaliation. Ostrander suffered severe pain and suffering, nausea, vomiting, blurred vision for approximately 21 days due to contusions to his face and head, swelling of both eyes and cheekbones and his right eyebrow, and busted lips. A second incident resulted in a deep laceration across the plaintiff's cheekbone. A third incident reopened the laceration and left the plaintiff with a large lump on his forehead, a bloody mouth and chin, an injury to his left shoulder, a swollen jaw, and contusions on his face and other areas of his body. A fourth incident resulted in the plaintiff being sprayed with a chemical agent.

In the instant matter, the plaintiff has suffered a compensable injury. He states that he was in agonizing pain due to burning of his face, eyes, and throat for a number of days. He also had "a lot of pain" in his right knee for "several days" as a result of being knocked downward onto a concrete walk. *See* R. Doc. 20, p. 2. However, the plaintiff has not provided any medical evidence supporting his suggestion that the knee complaints he had on May 17, 2024 (some year and five months after the incident) were caused by the December 2022 events giving rise to this suit. The medical records for the May 17, 2024, visit are illegible. While the plaintiff advised the Court on

June 6, 2024, that he "requested better legible copies for the medical treatment forms and will forward same to the court upon receipt," the Court has not received legible copies. *See* R. Doc. 20, p.1. Therefore, he has failed to prove that his most recent knee complaints were caused by the excessive force.

Based on the record before it, the Court finds that the plaintiff underwent an unnecessary and traumatic assault and clearly suffered serious and painful injuries, albeit temporary in duration, to his face, eyes, throat, and right knee. However, there is no evidence suggesting that these were permanent or even long-lasting injuries. By his own account, except for the recurrent knee pain which started some year and five months after the accident (which he has not proved is related), the effects lasted only days. As such, a compensatory damage award of $300,000.00, as requested by the plaintiff, would be grossly disproportionate to the injuries he sustained. The Court finds that a compensatory damage award of $1,500.00 will fairly and adequately compensate the plaintiff for the physical and mental injuries, and pain and suffering he underwent.

### *Punitive Damages*

A claim for punitive damages under 42 U.S.C. § 1983 requires a showing that the defendant's conduct is the result of "evil motive or intent, or ... involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Since the Court has already determined that the standard for excessive force has been met (force applied maliciously and sadistically for the very purpose of causing harm), the Court has also found that defendant Hardy's conduct meets the standard for punitive damages ("evil intent" or "callous indifference") as the two standards are substantially indistinguishable. *See Jones v. Conner,* 233 F.3d 574, at *1 (5th Cir. 2000) (*citing Smith v. Wade,* 461 U.S. 30 (1983)); *Hill v. Kilbourne,* 157 F. Supp. 3d 545, 552 (M.D. La. 2015) (deGravelles, J). An award of punitive

8

damages in this matter rests upon the Court's "discretionary moral judgment" as to the punishing and deterring effect punitive damages might have against defendant Hardy. *See Smith v. Wade,* 461 U.S. 30, 50-52.

"To determine whether punitive damages are excessive, the Supreme Court requires consideration of three factors (1) the degree of reprehensibility of the defendant's conduct, which receives the heaviest weight; (2) the disparity between the harm suffered (compensatory damages) and the punitive damages awarded; and (3) the possible criminal and civil sanctions for comparable misconduct." *Williams v. Kaufman County,* 352 F.3d 994, 1016 (5th Cir. 2003) (*citing BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 580, 583 (1996)); *Hill*, 157 F. Supp. 3d at 552.

*Degree of Reprehensibility*

To determine the degree to which conduct is reprehensible, the Supreme Court has instructed to consider whether (1) the harm was physical or merely economic, (2) the conduct evinced a reckless disregard of the health or safety of others, (3) the target was vulnerable, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 417–29 (2003). Here, there is only one mitigating factor – this incident appears to be isolated rather than repeated.[1] All other aggravating factors have been met. The harm was physical rather than economic. The conduct evinced a reckless disregard for the plaintiff's health and safety and was the result of intentional malice. The plaintiff, as an inmate, was a vulnerable victim. As such, only one factor mitigates the reprehensibility of defendant Hardy's conduct.

---

[1] Based on Hardy's statements to the plaintiff at the time of the incident, the plaintiff and Hardy obviously had prior encounters before the December 6, 2022, incident but there is no evidence that these resulted in a physical battery.

*Disparity*

Regarding the disparity between the harm suffered (compensatory damages) and the punitive damages awarded, the Fifth Circuit has stated:

> The probative value of the second Gore factor ... depends upon the character of the underlying injury and amount of the compensatory damages award. "When compensatory damages are substantial" and the monetary value of the harm is easily calculated, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425–26 [ ]. By contrast, "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Gore*, 517 U.S. at 582 [ ]; see also *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1016 (5th Cir.2003) ("Because actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all."); *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir.1996) ("In *Gore*, a 500 to 1 ratio was 'breathtaking.' However, in a § 1983 case in which the compensatory damages are nominal, a much higher ratio can be contemplated while maintaining normal respiration.").

*Cooper v. Morales,* 535 F. App'x 425, 433 (5th Cir. 2013). *See also Hill*, 157 F. Supp. 3d at 555.

In the context of maritime punitive damages, the Fifth Circuit rejected a 1:1 compensatory to punitive damages ratio giving as one of its reasons:

> [W]here the conduct is intentional and malicious, and the compensatory damages are small, imposing the 1:1 ratio would do little to serve the twin purposes of punitive damages: to punish the wrongdoer and deter his and others' similar future conduct. *Exxon* [*Shipping Co. v. Baker*], 554 U.S. [471,] 492 [(2008)] ("[T]he consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct.").

*Kenai Ironclad Corp. v. CP Marine Servs., LLC,* 84 F.4th 600, 611 (5th Cir. 2023).

The same holds true in this setting. Where the compensatory damages are nominal or (as in this case) small, holding punitive damages to an amount equal to or even a specific multiple of the compensatory damage award would do little to deter and punish the egregious, malicious and wanton behavior like that engaged in by defendant Hardy. An appropriate amount to achieve these twin goals should be decided on a case-by-case basis.

*Possible Criminal and Civil Sanctions for Comparable Misconduct*

Under Louisiana Law, the crime of second-degree battery seems most akin to the instant matter. *See State v. Harris,* 42, 376 (La. App. 2 Cir. 9/26/07), 966 So.2d. 773 (evidence sufficient to convict inmate defendant of second-degree battery where inmate sprayed guards with a chemical agent while trying to escape.) The crime of second-degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than eight years, or both. *See* La. R.S. 14:34.1. As such, $2000.00 is the most a criminal defendant could be fined for similar conduct.

However, the Fifth Circuit has stated that this *Gore* factor is less probative when there is no comparable civil penalty. In *Cooper*, the punitive damage award was $3,500 while the comparable Texas criminal law (assault with the intent to cause bodily injury to another) was a "Class A misdemeanor punishable by a criminal fine of up to $4,000 and up to one year of imprisonment." 535 Fed. Appx. at 433–34 (citing Tex. Penal Code §§ 22.01(a)(1), 12.21). The Fifth Circuit found that, while this similarity between the criminal sanctions and punitive damage award was relevant, it was less probative because it was not a civil fine:

> Although this sanction is commensurate with the $3,500 punitive damages award—a relevant consideration—the equivalence is less probative than it otherwise would be because it is criminal, not civil, in nature. Compare *Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 164 (5th Cir.2008) (finding dispositive that the punitive damages award fell within a civil statutory punitive damages cap), with *State Farm*, 538 U.S. at 428 [ ] (explaining that although "the existence of a criminal penalty does have bearing on the seriousness with which a State views the wrongful action," it is of "less utility" in determining the dollar amount of the award), and *Payne*, 711 F.3d at 103 ("The fact that New York classes [the defendant]'s conduct as warranting criminal prosecution tends to confirm the appropriateness of the imposition of a punitive award. However, it tells little about the appropriateness of the amount of the award. *Cooper*, 535 Fed. Appx. at 433–34.

Accordingly, while this Gore factor favors the Defendant, it is less important than the reprehensibility factor and less probative because it is not a civil sanction. *See Hill v. Kilbourne*, 157 F. Supp. 3d 545, 556–57 (M.D. La. 2015).

*Amount*

After considering the *Gore* factors and the record, the Court finds that an award of $10,000.00 is an appropriate award of punitive damages considering all of the circumstances of the case. Hopefully, the amount of this award will not only punish defendant Hardy but also deter him and other prison officials from similar conduct while not exceeding constitutional limitations. *See Hill v. Kilbourne*, 157 F. Supp 3d 545, 555 (M.D. La. 2015) (upholding a jury's punitive damages awards of $25,000 and $15,000 against two prison guards respectively when the plaintiff prison inmate was awarded only $500.00 in nominal damages). Accordingly,

**IT IS ORDERED** that the plaintiff's Motion for Default Judgment (R. Doc. 19) is **GRANTED,** and a default judgment is granted in favor of the plaintiff and against defendant Hardy. Plaintiff will be awarded $1,500.00 in compensatory damages and $10,000.00 in punitive damages. *Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on July 17, 2024.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**